PETER GORDON, Appellant,

*vs.*

WILLIAM BREWSTER, Respondent.

APPEAL FROM BROWN CIRCUIT COURT.

Damages on a continuing contract, as a general rule, can only be computed and recovered from the time of breach up to the time of trial.

When A. entered into a contract to hire B. to superintend his lumbering business, &c., for five years, at a salary of $2000 per year, and discharged him at the end of the year, and B. brought his action for a breach of the contract, the rule of damages is the rate of the salary, from the time of the breach up to the time of the trial, less the amount B. might have earned in the meantime.

If in such case B. had not commenced his suit until the expiration of the term of the contract, the rule of damages would be his salary for the term, less the amount he could have earned in the meantime by laboring elsewhere.

Vindictive or punitory damages cannot be allowed upon a mere breach of contract.

The respondent commenced a suit for the recovery of damages for the breach of a contract of hiring, by the service of a summons, issued out of the circuit court for Brown county, on the 28th day of March, 1857. The complaint was served upon the appellant's attorney on the 13th of April ensuing.

The complaint set forth that on the 21st day of March, 1856, the parties entered into a written contract, bearing date on that day, which by its terms was to take effect from the tenth day of that month, and to continue for five years from said tenth day of March, 1856, and set out the contract *in hæc verba.*

By the terms of the contract, the respondent agreed forthwith to proceed to Oconto, Wisconsin, and take the charge and superintendence of the appellant's saw-mills at that place, and all matters belonging to them, the necessary repairs of

the mills, and the general manufacture of lumber, during the sawing season, and during the winter months to superintend and manage the labor of procuring logs in the pineries for the mills; and during the continuance of the agreement, at all times so to conduct himself as best to promote the interests of the respondent in that behalf in all respects.

The appellant agreed to pay the respondent two thousand dollars a year for such services.

The complaint averred performance of said contract in all respects, from the date therein mentioned as the commencement thereof until the 10th day of March, 1857, and a readiness and offer to perform the contract for the remainder of the five years; but that the appellant refused to permit him to continue his employment, and at the date last aforesaid wholly discharged him from such employment; that in consequence of such discharge the respondent had ever since been deprived of all profitable employment whatever; that the appellant at the time of such discharge refused to pay the respondent three hundred dollars then due him for services already rendered, and eight thousand dollars, the amount of his salary per contract for the ensuing four years.

The complaint also averred that for the purpose of performing the said agreement on his part, the respondent abandoned a lucrative business of two thousand dollars annual profit, in Chicago, Illinois, a readiness still to perform said contract on his part, and demanded judgment for three hundred dollars, with interest from March 10th, 1857, and the further sum of eight thousand dollars.

The answer of the appellant was served May 5th, 1857.

The answer admits the execution of the contract set forth in the complaint, and that the respondent proceeded to Oconto and took charge of appellants business without unnecessary delay; denies all knowledge or information sufficient to form a belief as to the respondent's abandonment of a lucrative busi-

Gordon vs. Brewster.

ness in Chicago, and as to the profits thereof; denies express-
ly the performance of said contract by the respondent up to
any time whatever, and any readiness or offer to perform on
the part of the respondent in any respect as required by said
contract; denies that any sum whatever is due the respond-
ent from appellant; denies that the respondent had been de-
prived of all profitable employment, as charged in the com-
plaint; averred that appellant was a non-resident of Wiscon-
sin—that he had two large and valuable saw-mills at Oconto,
which he was compelled to entrust to agents, except at long
intervals and for short periods; that his sole consideration for
his promise to the respondent, contained in said contract, was
the desire to obtain the services of an able and faithful agent,
under such circumstances; that such mills were capable, with
judicious management, of manufacturing twelve million feet
of lumber per annum.

The reply denied some portions of the counter claim; set-
ting up a contract between Mendelbaum and a previous agent
of the appellant and R. H. Jones, not necessary to be stated.

The facts proved upon the trial, and the instructions of the
court to the jury are stated fully in the opinion of the court.
Some exceptions were taken on the trial to the ruling of the
judge in regard to the admission of evidence, but as they are
not discussed in the opinion they are omitted.

*James H. Howe and N. J. Emmons*, for the appellant.

This is by its terms an action brought to recover wages,
$300 for work done, and $8,000 for wages not earned; it is
not brought to recover damages for breach of an executory
contract.  The respondent can therefore only recover for
wages earned by him up to the commencement of the suit,
otherwise the complaint is bad for joining two causes of ac-
tion in one count.

2. If it is to be regarded as a suit brought to recover dam-

ages for a breach of an executory contract, we submit that an improper rule for damages was given to the jury. That the instructions asked by appellant should have been given, because—An action could have been maintained by respondent for his wages under this contract at the end of each year; or in other words, as often as there was a breach of the contract on the part of the appellant. 3 Met. 159; 5 *B. vs. Ald.* 942; Sedg. on Dam., 226; *Lord vs. Belknap,* 1 Cush., 279; *Cowley vs. Rose,* 3 Mass., 220; 18 Wend., 530; 2 Wend., 369; 1 Chitty's Plead., 102; 2 Par. on Con., 30; *Badger vs. Titcomb,* 15 Pick., 409; 2 Par. on Con., 60.

A person wrongfully discharged by his employer can, after the expiration of the time for which he was hired, maintain assumpsit for the wages he would have earned had he not been discharged—less the amount he has earned in other pursuits, 2 Smith's Lead. Cases, 27; *Collins vs. Price,* 5 Bing., 132; *Smith vs. Hayward,* 7 A. & E., 544; Sedg. on Dam., 229.

When respondent was discharged from his employment by appellant, it became his duty to at once seek other employment; he could not unnecessarily remain idle for any portion of the time; he must do everything in his power to render the damages as light as possible to his employer, and whatever he should earn in other pursuits would go to reduce his damages. *Miller vs. Mariner's Church,* 7 Green. 51; *Shannon vs. Comstock,* 21 Wend., 457; *Wilson vs. Martin,* 1 Denio, 605; *Hackscher vs. McCrea,* 24 Wend., 301; *Bradley vs. Denton,* 3 Wis., 557; *Walworth vs. Pool,* 4 Eng., 394.

3. Respondent ought not to receive anything as damages for a breach of this contract, accruing at the commencement, or at most after the time of trial, excepting for those incident to the breach, being matters of mere aggravation, which could not form the subject matter of a subsequent suit. 2 Saunder's Rep., 169; *Powers vs. Ware,* 4 Pick., 106; *Pierce vs. Wood-*

*ward,* 6 Pick., 206 ; *Langford vs. Owsley,* 2 Bibb, 215 ; *Grump vs. Stokes,* 2 Gill., 688 ; *Duncan vs. Markley,* Harper R., 276 ; Sedg. on Dam., 101.

4. Courts of justice will never give actual compensation for probable loss. In action on contracts, the sole object is compensation, and whenever it is possible to show the amount of damages, they will permit a party to do so ; when it is not, they will not allow either possibilities or probabilities to be given to a jury. *Wilcox vs. Plummer,* 4 Peters, 172, 182 ; Sedg. on Dam., 108, 22S.

5. The court erred in instructing the jury that if the non-performance was attributable to the wrongful act of the appellant in discharging the respondent, that circumstance went to increase his damages. This is giving respondent vindictive or punitory damages, which is never given in actions on contract. Sedg. on Dam., 203, 208 ; *McFarland vs. Bragg,* 3 Wis., 924.

*Tim. O. Howe,* for the Respondent.

The instructions given, and the instructions refused, are divided into several propositions, but they all involve but two legal questions, to wit :

1. Upon whom was the onus of proving payment for the services, actually rendered under the contract ?

2. What is the legal rule for assessing damages, to the servant, for the breach of a contract to employ for a given period ?

For the respondent, it is submitted that the burthen was upon the defendant to prove payment. Of this there can be no doubt.

For the respondent, it also submitted that the rule of damages laid down by the court below is the true rule.

It is submitted, that if a master wrongfully refuse to accept of services for which he has agreed to pay a stipulated price,

there are but three rules under which damages can be assessed to the servant. Those three rules are as follows :

1. To hold the breach of contract as *damnum absque injuria* and give no damages.

2. To hold that an offer to serve is equivalent to service rendered; and so award to the servant the same compensation for refusing to work him as was agreed to be paid for his work : or

3. To give to the servant, who is wrongfully discharged before the expiration of his term, the difference between the price agreed to be paid and what the servant can earn elsewhere during the balance of the term.

The first rule never was applied in any case. The last two rules have each been applied in different cases. 2d Smith's L. Cases, 27 and 30; *Gandall vs. Pontigny*, 2d E. C. L. R., 82; *Callo vs. Browneker*, 19 E. C. L. R., 629, 504 ; *Eston vs. Collyer*, 13 E. C. L. R., 517; 4 C. and P., 518; *Pagani vs. Gandolphi*, 12 E. C. L. R., 623, 177 ; *Stark vs. Pickering*, 2d Pick., 267 ; *Olmstead vs. Beal*, 19 Pick., 28 ; *Costigan vs. Hudson R. R. Co.*, 2 Denio, 609 ; *Hockster vs. De Latour*, 20 Law and Eq. R., 157 ; 2 Parsons on Contracts, 178, 179, 188 ; *Lantry vs. Parks*, 8 Cowen, 63 ; *Bradly et al. vs. Denton*, 3 Wis., 557 ; *Fish vs. Folley*, 6 Hill, 54.

*By the Court*, COLE J. The respondent commenced this action in the circuit court of Brown County, on the 28th day of March, 1857, to recover damages for the breach of contract.

It appears from the allegations of the complaint and the evidence given upon the trial, that the parties on the 21st day of March, 1856, entered into a written contract, bearing date upon that day, but which by its terms was to take effect on the 10th day of that month, and continue in force for five

Gordon vs. Brewster.

years from the last mentioned day; by which contract the respondent agreed forthwith to proceed to Oconto, in Wisconsin, and take the charge and superintendence of the appellant's saw mills, at that place, and all matters belonging to them, the necessary repair of the mills, and the general manufacture of lumber, during the sawing season, and during the winter months to superintend and manage the labor of procuring logs in the pineries for the mills, and during the continuance of the agreement at all times to conduct himself as best to promote the interest of the appellant in that behalf; and the appellant agreed to pay the respondent two thousand dollars a year as a salary for such services. The respondent entered upon the performance of the contract and continued in the employment of the appellant for one year, when he was discharged without any sufficient cause appearing for such discharge. The parties went to trial upon the pleadings before a jury, when the above matters were substantially established, as stated, by the testimony of the respondent; the appellant offering no evidence in the cause. Under the instructions of the court the jury rendered a verdict for the respondent for four thousand, four hundred and eighty dollars, upon which judgment was rendered. It is proper to remark, in order to understand the rule adopted by the jury in the assessment of damages, that the respondent upon offering to perform the contract for the remainder of the five years, and being refused permission to do so, about the middle of May, 1857, hired to work at a salary of a thousand dollars a year for one year. The question arising in the case is, as to the proper measure of damages upon the contract. It is quite apparent that the jury gave the respondent the difference between what he was receiving at the time of trial and what he would have received for his services under the contract, providing he continued to labor at a salary of a thousand dollars a year for four years.

What then is the legal measure of relief upon this contract ? In the language of one of the instructions given, " the law implies damages for the unlawful breaking of every lawful contract, and generally gives to the innocent party an immediate action to recover both such damages as are implied in law, and as he may be shown to have sustained." And it is contended by the counsel for the respondent not only that a suit may be brought at once for a breach of this contract, but that prospective damages for the whole time covered by the contract may be obtained, computing the damages according to the state of things existing at the time of trial, and assuming that such state of facts would not change during the time the contract has to run. Although this question is not free from difficulty and almost any rule of damages which may be laid down, may be open more or less to criticism, still we cannot adopt the above as the true measure of damages in this case. As a general principle, subject to some exceptions not necessary to be noticed here, it is the actual loss alone for which the common law seeks to give compensation. In this case the contract was to continue for four years from the time the respondent was discharged.

He was employed, it seems, to superintend a general business for the manufacture of lumber. In any business the price of labor fluctuates greatly within four years, particularly is this true of the lumbering business in this country. Now suppose the respondent could only obtain for his services next year five hundred dollars and so on, would it not be unjust to say he should only recover according to the rule adopted by the jury in this case ? Or suppose the value of labor should rise so that he could obtain for his services two thousand or twenty-five hundred dollars a year, what then would be his loss for the failure of the appellant to fulfil his contract ? Still further difficulty presents itself. Suppose the respondent should die within the four years, or become incapacitated to

Gordon vs. Brewster.

perform service of any kind, would he be entitled to recover the damages he has recovered ?

In ascertaining the amount of damages on his contract running four years, we do not think the court and jury were authorized in assuming that the same state of things existing at the time of trial would continue until the expiration of the contract. Had the respondent seen fit to wait before bringing his action until the period had elapsed for the complete performance of the agreement, the measure of compensation could then have been easily arrived at. We suppose he would then have been entitled to the entire amount of his salary, less what he would have reasonably earned during the time covered by the remainder of the contract in laboring elsewhere. But as the case now stands, we think he was only entitled to recover his salary on the contract down to the day of trial, deducting therefrom any wages which he might have received, or might have reasonably earned in the meantime. This rule appears to us to be the most equitable and safe of any that occurs to our minds, and the one most likely to effect substantial justice between the parties. We have not been able to find a case precisely in point, and we therefore feel at liberty to adopt such a principle for the assessment of damages upon this contract as may seem most consonant to equity and justice.

It follows from these views that the instructions given by the circuit court to the jury as to the proper measure of damages, were incorrect.

From the bill of exceptions, it also appears that the circuit court instructed the jury that if the non-performance of the contract was attributable to the wrongful act of the appellant in discharging the respondent, that circumstance would go to increase the damages the respondent had sustained. It was not pretended upon the argument that the respondent was entitled to recover in this action anything more than the actual

pecuniary loss he had sustained on account of the failure of the appellant to perform the contract, and probably that was all the circuit court meant by the above instruction. The language is a little unfortunate however, and might have led the jury to suppose they could give something more than actual compensation.

Perhaps it may be proper for us to further remark that we agree with the circuit court in considering the contract as entire, and that several suits upon it for the breach complained of could not be maintained.

The judgment of the circuit court is reversed and a new trial ordered.